IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AYSAN GUVENAL and GUVENAL INCORPORATED, <br><br> Plaintiffs, <br><br> vs. <br><br> 7-ELEVEN, INC., <br><br> Defendant, | Civil Action No. 19-391 |

## MEMORANDUM OPINION

Defendant 7-Eleven, Inc. ("7-Eleven") moves to dismiss the Complaint filed by Plaintiffs Aysan Guvenal ("Guvenal") and Guvenal Incorporated ("Guvenal Inc.") on multiple grounds. For the reasons that follow, its motion will be granted in part and denied in part.

### I. Relevant Procedural History and Factual Background

Plaintiffs commenced this action against 7-Eleven in which they assert claims of intentional interference with contracts and prospective contracts (Count I), negligent interference with contracts and prospective contracts (Count II), breach of contract (Count III), an accounting (Count IV), and defamation (Count V). 7-Eleven has moved to dismiss each of these claims.[1]

According to the allegations of the Complaint, Plaintiff Guvenal is the sole shareholder and president of Guvenal Inc., which was a franchisee of 7-Eleven. (Complaint ¶ 6). 7-Eleven is an operator and franchisor of retail convenience store businesses throughout Pennsylvania. (*Id.* ¶ 5). Guvenal Inc. operated a 7-Eleven convenience store in Turtle Creek, Pennsylvania as a

---

[1] In their Brief in Opposition to 7-Eleven's Motion to Dismiss, Plaintiffs concede that Count II fails to state a claim upon which relief may be granted. (ECF No. 14 at 14). Therefore, this claim will be dismissed.

franchisee from April of 2012 until the franchise was terminated on or about May 7, 2018. (*Id.* ¶ 7).

After 7-Eleven filed an action in this Court to terminate the franchise agreement and remove Guvenal Inc. from operating the Turtle Creek store, the parties entered into a settlement agreement (the "Settlement Agreement") on November 7, 2017, in order to provide for the termination of the franchise and to allow Plaintiffs to sell the franchise's goodwill to another qualified person pending the date of termination. (*Id.* ¶¶ 8, 9). The Settlement Agreement provided for a period of one-hundred eighty (180) days from November 8, 2017, for Plaintiffs to enter into a contract to sell the franchisee's goodwill interest in the Turtle Creek store to a third-party purchaser. (*Id.* ¶ 10). Defendant 7-Eleven also agreed to perform an audit and accounting of the inventory and cost incurred by Guvenal Inc. while it operated the store during this period and make distribution of proceeds in accordance with the original franchise agreement. (*Id.* ¶ 11).

In Count I, which asserts a claim for intentional interference with contracts and prospective contracts, Plaintiffs allege that they made a good faith attempt during the requisite time period to sell the goodwill. (*Id.* ¶ 15). This included the submission of over thirty names to 7-Eleven for its approval, each of whom would have agreed to or would have entered into a contract with Plaintiffs upon 7-Eleven's approval. (*Id.* ¶¶ 16–18). However, each person was either rejected or discouraged by 7-Eleven from continuing the application process. (*Id.* ¶ 19). This alleged wrongful conduct included accusing Guvenal of theft, providing details about the Settlement Agreement, making derogatory comments about both Plaintiffs, telling applicants that the price offered by Guvenal was a "joke," offering other franchises as better opportunities, telling a woman applicant that the location was unsafe for a woman to operate, intentionally delaying responses to

applicants, denying qualified applicants' applications, and otherwise dissuading applicants from seeking to purchase the franchisee's goodwill. (*Id.* ¶ 20).

Plaintiffs claim in Count III that 7-Eleven breached the Settlement Agreement by, among other things, failing to act in good faith and commercial reasonableness, refusing to properly conduct the audit and accounting of the inventory and sales for the Turtle Creek store, refusing to provide various forms of credit for Plaintiffs, refusing to make any payment to Plaintiffs for inventory and sales, and denying access to the records. (*Id.* ¶¶ 30, 31).

In Count IV, Plaintiffs seek an accounting of the books and records of the franchise. (*Id.* ¶¶ 34–38).

Finally, Count V asserts a claim of defamation based upon a false allegation from an agent or employee of 7-Eleven that Guvenal was stealing from 7-Eleven. (*Id.* ¶¶ 40–43).

## II. Standard of Review

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

3

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. A court may consider the complaint, exhibits attached to the complaint, matters of public record, and "undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

It is well established in this Circuit "that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002)).

## III. Discussion

### A. Intentional and Prospective Interference Claim

Plaintiffs contend that 7-Eleven interfered both with their contracts with prospective purchasers as well as prospective relationships with interested purchasers. 7-Eleven argues that Plaintiffs' claim for intentional interference with contracts and prospective contracts must be dismissed for several reasons. First, 7-Eleven asserts that it cannot be liable for interfering with actual or prospective contracts because it would be a party to the ultimate sale of the goodwill given that the terms of the Settlement Agreement required the purchaser to be approved by 7-Eleven and enter into a franchise agreement with it.[2]

---

[2] The Court will consider the terms of the Settlement Agreement and the Franchise Agreement as they are referenced in the Complaint and attached to 7-Eleven's Brief. *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) ("In deciding a Rule 12(b)(6) motion, a court . . . consider[s] only the complaint, exhibits attached to the complaint, matters of

4

In considering this argument, it is relevant to review certain terms of the Settlement Agreement. Among other things, this agreement provides that Guvenal, Inc. had one-hundred eighty (180) days within which to enter into a contract to sell its goodwill to a third-party purchaser. (Settlement Agreement, ¶ 10). While 7-Eleven had the final say in determining if the prospective purchaser was qualified and would be approved as the franchisee (*Id.* ¶ 10(b)), the sale price of the goodwill could be any amount of Guvenal, Inc.'s choosing. (*Id.* ¶ 10(a)).[3] In assessing one or more applicants with whom Guvenal, Inc. contracted, 7-Eleven was required to review their application using the same standards that it applied to similarly situated applicants. (*Id.* ¶ 10(b)). If the termination date in the Settlement Agreement expired without a sale, then Guvenal, Inc. would forfeit its goodwill and the franchise could be sold by 7-Eleven to anyone. (*Id.* ¶ 5). The Settlement Agreement is silent regarding whether 7-Eleven could reject any and all candidates submitted by Guvenal, Inc. regardless of whether they met its requirements and standards.

Thus, there were two contemplated contracts in play: a goodwill contract between Guvenal, Inc. and the potential third-party franchisee; and a franchise agreement between 7-Eleven and the third party upon its approval of the applicant. Contrary to 7-Eleven's assertions, Plaintiffs' claims relate to interference with contracts for the sale of the store's goodwill. There are no allegations in the Complaint that 7-Eleven was or would be a party to the goodwill contract itself. Rather, it would only be if 7-Eleven had approved a prospective franchisee that it would have entered into a franchise agreement with the franchisee. This never happened, as Plaintiffs allege, because 7-Eleven deliberately discouraged or rejected every candidate.

---

public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

[3] 7-Eleven also had the right to make other franchises available to the prospective franchisee. (*Id.* ¶ 10(b)).

5

The Court agrees with Plaintiffs that these allegations state a claim for tortious interference with prospective contractual relations. 7-Eleven was obligated under the Settlement Agreement to assess each candidate provided by Plaintiffs. If it deliberately and intentionally rejected any and all qualified candidates during the one-hundred eighty day window within which Plaintiffs were entitled to sell their goodwill, and did so with the intention to preclude Plaintiffs from obtaining consideration for the sale of their goodwill, this could represent a purposeful act on the part of 7-Eleven to prevent the relationship from occurring in the absence of any justification for doing so.

The question then becomes whether the Complaint states a claim for interference with a contract between Plaintiffs and one or more purchasers of the goodwill. Plaintiffs allege that they entered into one or more contracts for the sale of the goodwill; however, the Settlement Agreement makes the sale of Plaintiffs' goodwill contingent upon 7-Eleven's approval of that prospective franchisee. Thus, any contract between Plaintiffs and a third-party presumably was enforceable only if 7-Eleven approved the candidate for the franchise. On the other hand, if 7-Eleven rejected all candidates up to and including the termination date in the Settlement Agreement, despite having received a qualified candidate who met all of the requirements of a franchise, and did so with the intent to deprive Plaintiffs of compensation for their goodwill, then it is at least plausible at the pleading stage that Plaintiffs have stated a claim for tortious interference with contractual relations.

7-Eleven also asserts that the gist of the action doctrine bars both of these claims. In adopting the gist of the action doctrine, the Pennsylvania Supreme Court explained that if the underlying facts on which a claim is based establishes that the duty is one created by the parties' contract, that is, a duty that the party is only obligated to perform based upon the existence of the contract, then the claim is for breach of contract. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa.

6

2014). Alternatively, if the claim involves a broader social duty, then it must be regarded as a tort.

*Id.* The Pennsylvania Supreme Court has further noted that:

> [T]he mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract. Indeed, our Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party . . . . Consequently, a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Id.* at 69–70.

Under the gist of the action doctrine, "[w]hen a plaintiff alleges that the defendant committed a tort in the course of carrying out contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999). Tort claims are barred under the gist of the action doctrine:

> (1) where the tort claim "aris[es] solely from a contract between the parties"; (2) where "the duties allegedly breached were created and grounded in the contract itself"; (3) where "the liability stems from a contract"; or (4) where the tort claim "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract."

*Bruno*, 106 A.3d at 67 (quoting *eToll Inc. v. Elias/Savion Adver.*, 811 A.2d 10, 19 (Pa. Super. 2002)). Stated differently, "if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." *Perloff v. Transamerica Life Ins. Co.*, 393 F. Supp. 3d 404, 408 n.14 (E.D. Pa. 2019) (quoting *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 620 (E.D. Pa. 2010)).

7

Turning to the allegations of the Complaint, it is undisputed that the parties entered into a Settlement Agreement which included terms allowing Plaintiffs to attempt to sell their goodwill to a third party, who would then have to be approved by 7-Eleven. However, the Settlement Agreement does not include a provision that addresses whether 7-Eleven could reject any and all candidates offered by Plaintiffs regardless of whether they met its requirements and standards. In this regard, Plaintiffs claim that 7-Eleven wrongfully rejected or discouraged individuals referred by them to 7-Eleven, including but not limited to telling them that the price for the goodwill was excessive and a "joke," making derogatory remarks about Plaintiffs and otherwise discouraging them from seeking to purchase Plaintiffs' goodwill. (Complaint ¶¶ 19, 20).

Thus, while the contemplated sale of the goodwill and the process for approving a prospective purchaser is addressed in the Settlement Agreement, the wrongful conduct that has been alleged represents, at least in part, a social duty that is collateral to the agreement itself. The duty arose from social policy considerations; having agreed that Plaintiffs could sell their goodwill, 7-Eleven had a collateral duty not to wrongfully interfere with the relationship between Plaintiffs and a prospective or actual purchaser. Taking Plaintiffs' allegations as true for purposes of the pending motion to dismiss, in the event that 7-Eleven intentionally rejected every candidate for the sole purpose of harming Plaintiffs, the gravamen of these claims sound in tort, not in contract. Thus, the gist of the action doctrine does not bar Plaintiffs' claims at this juncture.

7-Eleven also argues that because intentional and prospective interference are separate claims, they must be pleaded in separate counts. Plaintiffs asserts that as the elements of proof are essentially identical for both causes of action, dismissal is not appropriate as it is contrary to the notice pleading standards applicable in federal court. While the Court agrees that detailed factual allegations are not required, these claims are, in fact, separate causes of action and should be

pleaded in separate counts. Therefore, Plaintiffs will be required to separately plead these two claims, which will allow them to separately identify relationships that were prospective as opposed to actual.

The Court does not agree with 7-Eleven, however, that the allegations set forth in the Complaint fail to satisfy the elements of each claim. Plaintiffs have alleged that they submitted over thirty individuals to 7-Eleven for its approval, all of whom are known to 7-Eleven, and have specifically identified thirteen individual who were sent to apply for the franchise. Plaintiffs further assert that agents or employees of 7-Eleven wrongfully rejected or discouraged them by making specific statements to them with the intent to harm Plaintiffs. While more specificity can be gained through discovery, these allegations are sufficient to plead the elements of each of these causes of action.

Similarly, assessing whether the statements that purportedly were made to third parties are truthful or merely opinions is premature for purposes of a motion to dismiss since the allegations that these statements were false or otherwise designed to discourage prospective purchasers of the goodwill must be viewed in the light most favorable to Plaintiffs.

B. Breach of Contract Claim

In their breach of contract claim, Plaintiffs assert that 7-Eleven's conduct "as described herein" violates its duty to act in good faith and commercial reasonableness. They also allege that 7-Eleven breached the Settlement Agreement by failing to conduct an audit and accounting; failing to provide credit; failing to credit Plaintiffs for amounts that were paid by them to acquire inventory; denying access to records; and refusing to credit Plaintiffs for amounts received by 7-Eleven on products sold by Plaintiffs. (Complaint ¶¶ 29–31).

7-Eleven contends that this claim should be dismissed because Plaintiffs fail to allege that they complied with the contract terms and that all conditions precedent have been fulfilled. It further argues that the terms of the Settlement Agreement do not support Plaintiffs' claims because Plaintiffs have not identified the provisions of the agreement that were breached and/or that its terms do not support Plaintiff's allegations that a breach occurred. 7-Eleven also asserts that the duty of good faith and fair dealing is inapplicable here because in a franchise situation, this duty only arises in the context of an attempt by the franchisor to terminate the relationship. Finally, 7-Eleven argues, Plaintiff Guvenal's individual breach of contract claim must be dismissed for lack of standing because Plaintiffs do not allege any breach of the duties owed to him by 7-Eleven.

The Court agrees that as currently pleaded, the breach of contract claim is deficient for several reasons. First, by merely incorporating all prior allegations in support of its claim, Plaintiffs fail to specify the actual wrongful conduct that supports this claim.[4] Moreover, Plaintiffs have failed to cite to the specific terms in the Settlement Agreement that were purportedly breached. In addition, the Complaint fails to state a claim on behalf of Guvenal as opposed to Guvenal, Inc. While he is a party to the Settlement Agreement, the obligations that are alleged to be in dispute are duties owed to the corporation, not to Mr. Guvenal as its principal. Moreover, there are no allegations in the Complaint that could support a claim that he is a third-party beneficiary of the duties owed by 7-Eleven to Guvenal, Inc.

---

[4] 7-Eleven argues that the Complaint should be dismissed as a shotgun pleading because each count incorporates by reference the allegations of the previous count. While it is true that the Court of Appeals for the Third Circuit has sometimes criticized this approach, *see, e.g., Hynson v. City of Chester Legal Dep't.*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988), the Court will not dismiss the entire Complaint based upon its incorporation of prior allegations because, except as otherwise noted, the Complaint provides adequate notice of the basis for each cause of action asserted.

10

With respect to the duty of good faith and fair dealing, the Court does not agree that the case law cited by 7-Eleven necessarily resolves this issue. Plaintiffs do not allege that the Franchise Agreement was breached. The contract at issue is the Settlement Agreement. While it is true that it addresses the termination of the franchise between the parties, none of the alleged wrongful actions relate to the termination itself. Rather, the "conduct as described herein" appears to relate to 7-Eleven's purported rejection of the prospective purchases of the goodwill. As good faith and fair dealing is implied in every contract, Plaintiffs may certainly include allegations that 7-Eleven breached this duty. Once Plaintiffs specify the conduct to which they refer, this issue will become more clear.

A court must permit amendment unless it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Therefore, the breach of contract claim will be dismissed without prejudice and Plaintiffs will be given leave to amend. Likewise, as the request for an accounting is a form of relief incident to a breach of contract action, Plaintiffs may include this form of relief in the event that they choose to amend their breach of contract claim.

C. Defamation Claim

In Count V, Plaintiffs allege that after the termination of the franchise, Guvenal was informed that an agent and/or employee of 7-Eleven accused him of stealing from 7-Eleven (Complaint ¶¶ 20(a), 40), that this allegation was untrue (*id.* ¶ 41), and that it damaged his reputation. (*Id.* ¶ 43.). 7-Eleven argues that Plaintiffs' defamation claim lacks sufficient specificity because it fails to identify when the defamatory statement occurred, who made it or to whom it was made.

The Federal Rules of Civil Procedure require notice pleading, not fact pleading. *See* Rule 8 of the Federal Rules of Civil Procedure; *Roskos v. Sugarloaf Twp.*, 295 F.Supp.2d 480, 492

11

(M.D. Pa. 2003). At the same time, the allegations of the Complaint do not provide essential details regarding the elements of Plaintiff Guvenal's defamation claim. Therefore, Plaintiffs will be given leave to amend this claim to include the date, if known, of the alleged defamatory statement, who made the statement, and to whom it was made.

## IV. Conclusion

For the reasons stated herein, 7-Eleven's Motion to Dismiss will be granted in part and denied in part. An Order will follow.

BY THE COURT:

PATRICIA L. DODGE
United States Magistrate Judge

DATED: December 3, 2019.